Thank you for accommodating us in waiting. We've got one case left this morning. Roque De La Fuente v. Wyman. When you're ready, counsel. May it please the court, my name is Callie Castillo. I'm here on behalf of Kim Wyman, Secretary of State of the State of Washington. I'd like to reserve five minutes for rebuttal time. Washington's convention notice requirement puts a minimal burden on minor party and independent candidates and is reasonably related to the state's important regulatory interests of promoting transparency through public notice and public participation and protects the integrity of the state's election process. The district court erred in finding this notification requirement unconstitutional and this court should reverse. Well what is your view of the burden of justification that the state bears defending this notice requirement? Assuming the panel were to conclude that the notice requirement imposes a severe burden, do you concede that the law cannot withstand strict scrutiny? No, Your Honor. Under, if this court were to find that this particular notice requirement did have a severe burden, then the state's import, the compelling important, compelling regulatory interests of public notification and the specific tailoring of this notification to the convention process would still establish, would still be upheld under strict scrutiny. But this court needs to look at the actual burden that this newspaper notification requirement puts on minor party and independent candidates. And the record in this case is that it puts a very minimal burden. In fact, the only testimony in the record was from the state's representative, who said that Washington's requirements compared to other states was very easy to comply with and imposed a very minimal burden. Well, he's now, though, what, here's what I worry about, just because the First Amendment is not always an easy area to get your arms around. And a lot of times that, and right now, the, I guess, I'm not sure how we pronounce it, is it Rocky de Or something? Yes, Your Honor. Yes. That right now, he seems to be moving his argument to the convention requirement. Is that properly before us? Absolutely not. The district court specifically found that. Is that requirement, that convention requirement bothers me more. And I could understand the case, right? So, to just follow up on, because I had the same question. You read the brief, it's a little bit of a schizophrenic experience, because the injunction is for 620 and 640 sub 6, right? Correct, Your Honor. So, again, going back to just Callahan, one of those is the requirement to publish and one is to certify that you've published. Yes, Your Honor. And that is the only regulation that is at issue in this case. Mr. De La Fuente did not challenge in his complaint, nor in the summary, wasn't until summary judgment, that the arguments began morphing in terms of attacking the convention process. The complaint mentioned 640 in one place, and then it mentioned 620 a lot. Yes, Your Honor. And then the whole point of the complaint was because Mr. De La Fuente had not complied with this newspaper notification requirement. There's nothing in the record that any of the other requirements for Washington's process for obtaining access to the ballot had been made. And the only challenge that he made when he both sought a TRO right after the complaint was filed was the newspaper notification requirement. And the district court specifically found that Mr. De La Fuente had an opportunity to amend his complaint during the course of this case, and he chose not to. And that simply isn't, the rest of the convention requirements are simply not before this court. This court is only looking at the newspaper notification requirement. Let me ask you this. I take your point that it's not very difficult to comply with it, but let's look at the other side. What's accomplished by it? I mean, we're all familiar with notices in the back of the newspaper that everybody ignores. You do it for legal requirements for all kinds of things, and nobody ever reads them. So, what's the point of the requirement? Well, the requirement, as established by the record of the Declaration of Laurie Agino, who is the Director of Elections, is Washington requires these newspaper notification requirements for its elections. And that provides a public notification of the fact that the convention is occurring, and provides various different parties who may have an interest in the, in those requirements that is going to occur at the convention, to participate in the process and to know that these are occurring. That could be the voter who must, who is only able to sign a single petition for a minor party or independent candidate. It may be somebody who is seeking to be a presidential elector for that candidate, because the statute does treat major parties and minor parties differently, and what's the justification for that? Well, the United States Supreme Court in American Texas versus, in American Texas as well as in Timmins, has long said that the states can treat minor parties and major parties under different processes, because of the recognition that there nation has always had, for purposes of history, a two-party system. But what states can't do is prohibit minor parties or independent candidates from ever accessing the ballot. They can certainly... And they have the hardest time. They have less money available, and when you put more requirements on a minor party, I mean, a major party has a whole bunch of lawyers, they have a whole network of everything to do. So, in essence, you know, the argument would be that, that, that putting, that it is more burdensome for a minor party to do the things... I mean, a major party can just do it. They have people that do it. They have money to do it. They have everything. And the record in this case is that Washington's access for minor party and independent candidates is very easy. Since 2008, for all the presidential elections, we've put 16 minor party and independent candidates on the ballot. Well, that's not a huge... That, that, that is... I know he's the only one, and, you know, and sometimes we all know that, you know, sometimes... And I'm not saying I don't know this individual, but sometimes it's like, okay, they're never going to win. They're real annoying and all of this, and so why not let's make them do more and make their lives more difficult? Well, that... You can run into the First Amendment on that. You absolutely could, but the standard... I mean, because you're essentially just... You're making them have to do more to have access to that process because... And are they ever going to win? Probably not in this, but that doesn't mean that you can trounce on their First Amendment rights. But the standard that the United States Supreme Court and this court has reckoned... has asked is, can the individuals, can the minor party and individual... independent candidates actually reach the ballot? Because that's really what we're looking at. We're not looking at the ultimate election of whether they're going to be established as the ultimate winner in the election. We're looking at, can they access the ballot? But this seems to go to the convention requirement. Exactly, Your Honor. Does this permanent injunction leave us in a position where minor candidates have to have this... parties have to have these conventions, but the public doesn't have to get notice? Exactly, and that is exactly the state's concern in requiring this newspaper notice. Is there any other kind of notices that's substituted or required? This seems to me to be really a transparency concern now. And that's absolutely true. In the United States... It's a very different case if this also took on the convention requirement. Then I think that a lot of the concerns that Judge Callahan is raising about the burdensomeness, that's a much tougher case for you. But it's not the case here today, I don't think. I absolutely agree with you, Your Honor. What will happen going forward if this permanent injunction remains in place? Could you just walk us through that? So in that case, Washington would still require the same convention to occur for minor party and independent candidates. And the convention is much more than a signature-gathering campaign, as De La Fuente suggests in the record. Defined as an assemblage of people. It's an organized assembly of people. It must contain, have a hundred attendees that are Washington voters. And collectively, across the number of conventions that parties may choose to hold, they ultimately have to have a thousand signatures. How would people know that's happening? They wouldn't, Your Honor, because under, for example, for De La Fuentes, the only piece that he put in the record, which was after litigation had started, was a single Facebook posting saying, hey, we're going to be meeting at this corner. Let's do that. There's no guarantee that the general public and those who may have an interest of who's going to be participating in all these events are going to ever see that Facebook notice. But even if there wasn't any notice, then you run the concerns that you might have multiple candidates competing for the same nomination within Washington State. And De La Fuente makes a lot of arguments with respect to the national conventions. Forgive me, but you mean multiple candidates from the same party? Yes, Your Honor. And that is, that is borne out in history of Washington State, where we've had in the past, for example, competing nominations for the Reform Party as to who was going to be the standard-bearer in Washington on the ballot as a Reform Party candidate. And by simply requiring this public notification, there is at least a singular opportunity for those who are interested in these events to know that they're happening and to ensure that the candidacy isn't nominated in Washington in the dead of a night or in a basement somewhere. Washington has long recognized and has a long history of making the electoral events very public. And the United... Do you concede that the standard of review is above rational basis, though? Yes, Your Honor. That is, that was made clear by this court's case in public integrity, that it's a balancing test of... So the sliding scale? It's the sliding scale. That if this court were to make a decision that supports having that low burden... And here, complying with this newspaper requirement, there is nothing in the record that establishes this as more than a very de minimis burden. And that, therefore, this court must only identify the state's interests that we're expressing here for why we require this newspaper notification. And those justifications are the informational interest that has been long accepted by the United States Supreme Court in the Washington State Grange case, as well as John Doe versus Reed, and also the integrity of the elections to ensure that multiple fraudulent or frivolous candidates don't ultimately reach the ballot, which is recognized in the United States Supreme Court by Timmons and Bullock. It avoids some sort of fractionalized inter-party feuds as to who is going to be the standard bearer in Washington State on the ballot. And it also ensures that the selection for electors for the candidacy is not made in secret. All of those public interests are served by this very, very low burden of this newspaper requirement. And Mr. Bullock has no restriction that this newspaper requirement actually has. And so, under the verdict balancing test, this statute does satisfy constitutional scrutiny. And in fact, this court, as well as the United States Supreme Court, have affirmed much higher burdens on candidates who are reaching, who are seeking access to the ballot. And so, if this minimal requirement doesn't satisfy constitutional scrutiny, it's hard to see what other ballot restriction requirements would satisfy constitutional scrutiny. How much evidence do we have in the record with respect to what the meaning is of newspaper of general circulation? And how much evidence, if any, do we have in the record as to how much it costs to place an ad? First of all, your honors question with respect to a newspaper and general circulation. I mean, that's a statutory phrase. That's a statutory phrase, and it's actually defined in state law. Unfortunately, at this podium, I don't have that statute. I'd be happy to provide it to you, but it is defined in a specific statute as what that means. And then, with respect to your honors question about how much it costs, for example, at ER 103, one of the Green Party's publications cost ultimately $79 with tax. There's another one that costs $40. It really depends on the newspaper that the particular candidacy is looking to publish in. Yeah, and I'm trying to get a sense of the burden in the record. And the answer is, it's a bit of a nuisance to do it, but the money is not very much. And in fact, the Green Party specifically said, with respect to this process of establishing the newspaper notification, and ultimately the convention process, that it actually serves their party's purpose of party-building activity by requiring to show this support in the state for their particular candidacy. And that is the only record that is, that is the only testimony in this record to establish any sort of problem with this. I mean, I'm sorry, that's the only testimony with respect to what this notification requires. De La Fuente could, did not show any sort of burden. Instead, he attacks the convention requirement, and he mischaracterize it, mischaracterizes the convention requirement by establishing that it's only a signature-gathering campaign. But that is simply false. He also makes two other arguments with respect to the notice, newspaper notification, in calling it a prior restraint or a burden on his core political speech. But requiring them simply to have notice of these events puts no restriction on their ability to speak. It puts no restriction on their, when they can speak, where they can hold these conventions. Instead, it is a simply a public notification that serves well-recognized interests. The newspaper, forgive me, newspaper general circulation within the county where they want to have the convention, it need not be a statewide newspaper? Correct, Your Honor. There is a statewide database that we've put in the record that is available to anybody, so that if you're trying to monitor all of these newspaper notifications and want to know, monitor when these conventions are going to occur, that's easily found. And that same newspaper notification is very The Secretary of State is required by state law to notify the public and put into newspaper notifications of the primary election and for the general election. So the same standards that we're applying for us to put, give the state notice of these electoral events are what we're putting on minor party and independent candidates. And they have shown that it is no burden. So basically, if I were to summarize your argument, you would say that we're limited by virtue of how Mr. De La Fuente has framed the issue to the 10-day notice. Yes, Your Honor. And that you say that it, you're not saying it's, it's somewhere between rational basis and strict scrutiny and that you've satisfied that. Yes, Your Honor, absolutely. Our reasonable interest, having this newspaper requirement because of the low burden, certainly serves the state's important interests of public notification and protecting the integrity of these events. And that, under the United States case law and this court's elections case law, amply satisfies that burden. The district court simply rejected the state's arguments because he frankly found this law stupid. And that is, but that is not the appropriate test. That is to say it can be stupid and constitutional. Exactly, Your Honor. I'd like to reserve the remaining of my time for rebuttal. Okay. Thank you. Thank you. Good morning, Your Honors. If it would please the court, Paul Rossi for Rocky De La Fuentes. You got it right the first, first time, Judge Cameron. While Appellee agrees with the lower court that the Chowns statute is unconstitutional under the Anderson verdict balancing test, Appellee still contends that the Chowns statute does impose a severe burden on core political speech subject to strict scrutiny. Now, is there anything at issue here other than the newspaper notice? No. The news, it is a newspaper notice, Your Honor. So that's, that's the only question now in front of us. But the, but the notice is couched in the broader spectrum. I want a yes or no first. Yes. So the only question in front of us is the newspaper notice? Yes. Okay. So does that mean that you agree with opposing counsel that if this permanent injunction remains in place, parties still, minor parties still need to have these conventions, but the public doesn't have to be told about them? No. Well, the convention, the, well, our position is, is what happens in Washington is what happens in the all 49 other states is which when candidates are nominated by their parties at national conventions or independent candidates, they circulate petitions to show modicum of support. That's all that's happening here. These are not conventions, Your Honor. These are, these are, these are people circulating petitions at the end of docks or, or ferries in, in, in Seattle or in, or, or tables at Walmart. These are not conventions. Okay. I don't understand that point because, and you make it several times in your, in your briefing, but, but the, but the, well, the statute requires an assemblage, they define the term convention. Assemblage is, assemblage, as they have applied the law, is simply a hundred people at the, a hundred people sign the petition at the location noticed in the paper. And the, the, the problem with the notice requirement is the 10-day waiting period, especially with respect to independent presidential candidates coming into the state, not knowing the lay of the land, if they pick a wrong spot, they're not, they have to wait, they have to do a brand, and they want to go over here. I mean, you pick a wrong spot so they don't get the signatures they need, or? Correct. Okay. Then they have to provide a brand new notice requirement, spend the money, put a brand new notice requirement, wait 10 days, have all their circulators waiting in a hotel for 10 days before they can then go to the other side of the city where the circuit, where the petition gathering may be better. That's where the real burden is. And in fact, that's why it's a severe burden on speech, because the Supreme Court has consistently struck down ballot access restrictions, which impose, which limit the, the ability of petitioners to, to get a wider audience. In, in Buckley and Mayer v. Grant, the Supreme Court struck down ballot access restrictions, which had the effect of limiting the size of the audience that a signature campaign could reach. In Buckley and Mayer, the court applied strict scrutiny to laws restricting those who were allowed to petition, thereby reducing the size of the audience that the remaining petitioners could reach. Here, the size of the audience is limited by the notice requirement requiring you to, to, to go to one spot, stay there, and gather signatures only there. You're not allowed to move across town. You're not allowed to go to any other place in the county. And that is where the severe burden lies. And strict scrutiny has always been applied to ballot access laws, which have the effect of limiting the size of the audience that petitioners can get. Okay. I'm, I'm trying to understand your argument sympathetically. So these, this is not a sort of a hostile line of questioning. So you're saying that the convention requirement doesn't require actually a convention. It just requires 100 people having signed the petition at various times at the, at the same location. Correct. That's the, so that's, that's the quote convention? Yes. That's, that's all that happens here. The at various times part, isn't it, isn't it, that's just contrary to the language of the statute. The convention is an assemblage of people. But that's how they have applied it. That's what the In, in, in other words, they've given you a total break. They don't require you actually to have a convention. And that's why we're not challenging the convention. It's the notice requirement. It's limiting pure petitioning So how hard is that to figure out where you're going to get a lot of traffic? Okay, I'm going to get a lot of traffic down at the Ferris wheel, or I'm going to get a lot of traffic at Coleman Dock, or I'm going to get a lot of traffic in the University Village. And you publish a notice and you go out there. I mean, you don't have to be a rocket scientist to know where the nice places in Seattle might be. I'm from Pennsylvania. I have no clue where those are. And if you might want to circulators are from out of the state. Well, you might want to call somebody who lives here. If you're going to run somebody in the state, but that the state can't impose on national presidential candidates who are running, who are getting on the ballot in 50 states, they select petition companies who have the size and scope to actually go into these states. Sometimes for the first time, you can't, this requirement can't then lead to requiring independent presidential candidates, specifically independent presidential candidates from having to find somebody in Washington to who might know the lay of the land. And even that effect, you know, I just have to think that, I mean, how hard is it? It's hard. No. How hard is it to find somebody who knows the community? If you, but that's not the constitutional question. They know that's what they have. No, no. That's exactly what you're making the constitutional question into. You're saying it's too hard. It is too hard because it limits, it limits the ability of petitioners to move around. And that, that petitioning activity is part of their campaign, Your Honor, and limiting their campaign during this period of time to specific locations, without the ability to move around. Nothing prevents them from doing it in other places. In addition, I'm sorry, Your Honor, what? Nothing prevents them from doing petitions in other places. It's just that they have to have a certain number of signatures from a single location, which the state has generously said, that's a convention, which of course it's not. But if that's what they say, okay, you just got to break. You don't have to actually have a convention. But they still then have to publish a brand new note. If they decide after, if they decide they want to move around after the fact, after the first notice is published, they have to publish a new one, wait 10 days before they can go to someplace else. And that limiting of the audience. No, you didn't take my point. There's nothing that prevents them. Now it may not count toward the convention, but nothing prevents them from going everywhere. But there, but, but, but there's no rational reason why a petition, a signature gathering operation would go, would do that moving around, spend the money on those signatures if they're not going to count for the, the purpose of getting the, the, the candidate on the ballot. I understand that too, but you were telling me that they're prevented from doing it,  It imposes a certain amount of pressure on the petitioner. It's a severe burden on their ability to move around freely as it goes around. Look, the Green Party and Libertarian Party, you know, I've done, I've done politics in my life. It does not take very long to get a hundred signatures in a particular place. I can, if you give me a few days and paying minimum wage to the guy standing out there in the petition in front of virtually any safe way in town, you can get your hundred signatures. That's, that's not very hard. Yeah. Well, I've assiduously avoided politics in my life and, but I am a former Superior Court judge who entered a somewhat similar injunction at one point and, and I was reversed by my state Supreme Court for not really looking at this painfully. I, I'm not bitter, but it was a painful experience. And, and, and, and, and I think correctly. So I was reversed because they, they, they found that I hadn't really considered the statutory scheme as a whole. And so I keep coming back to, you didn't challenge the convention requirement. And so by picking off part of it and not looking at the whole, it strikes me as we'd be left with a pretty wacky circumstance here where you're telling me they have to have, I mean the statute requires conventions and assemble it to people. And surely the state has an interest in making sure the public has the ability to know that's happening. No, they don't. They do not. They absolutely do not. Nope. Nope. No other, no other. There is no court case that says that has ever said that, that, that first amendment activity has to be noticed in a newspaper first. There's not a single case out there. In fact, Watchtower says prior notice is offensive. You're answering a different question. I just want to give you, you have 11 minutes, but she's got a very strong argument that the state has an important interest in transparency. The state doesn't have any interest in the state's only interest is making sure that a candidate presents petitions with them that shows a modicum of support as defined by the state of Washington, which in Washington, it's a thousand signatures and that those signatures are valid. Has nothing that state has no interest in, in any kind of notice for, for people to come, to, to come to the convention. What I hear you saying under this is, and I think it sort of picked up with, it could be a stupid law, but it could still be constitutional that people that I hear a skepticism that the state says things that they don't, they just say them and that we don't relate that you don't really believe them that they relate that they're stating that. But I think for purposes of this argument that we have to accept at face value that that is what their, their stated interest. Well, but they have produced no evidence whatsoever on the record, no evidence that anybody is motivated by these notices that anybody has ever contacted the contact person notices and they have, they have petitions from the libertarians and the greens, a thousand each at least because they made the ballot of names and dresses of all the people signed and that they didn't, they didn't produce one person that said they saw the notice that they acted on the notice that they called or they even saw the notice and these are people who come off the, the, the, the, the boats and they're, they're presented with a petition and they signed a petition. That's why we didn't challenge the convention requirement because it was so nonsensical that this is simply pure petitioning activity, which is uniquely subjected to this notice requirement that isn't subjected to any other candidate or referendum initiative action in the state of Washington at all. If public prior notice is so important to the state, they don't apply it to any state official who seeks to get on the ballot by petition and they don't impose it on the initiative referendums, which are, which are clearly state interests at amending the con their constitution or through new legislation. If these interests are so important, why are they not imposed on any other political candidate or initiative and it's, it's simply directed at independent candidates for president and third party presidential candidates. Would you be making the argument, would you even be here if the convention requirement were actually a requirement for a convention? Pardon me? Let's assume that the state of Washington actually construes the word convention in a conventional sense, as it were. That is to say it requires actually an assemblage of people, a hundred people at the same time to be there and you know, people do whatever they do at conventions. Would you be making the same argument as the pointlessness of the newspaper requirement? Um, actually no. I don't think you would. Because, because then, then it's an actual convention. People, let me, may I modify your, your, your statement? If, if it's, if it's a, if it's a convention of the party where all party members have a right to know about it, that kind of public notice, I'm not sure that would be affected in a, in a legal notice in a newspaper, but that kind of notice to a political party for an actual convention sort of makes sense. But to note, to put a notice in a paper that nobody knows about 10 days before anything ever happens. And when it's when they, what, what, what really is only happening is petitioning activity. The same kind of petitioning activity that happens in all 49 other states, the notice requirement makes no sense. And the state has produced no evidence in support of their asserted reasons that any of this really happens. Nobody acts on these notes. Any of what happens? Pardon me? You said no evidence that any of this ever happens. What's this? The, this is, they say that the public needs notice. They need notice of these so they can, they can make a decision about the candidate. Well, there's no evidence of that. In fact, the notice requirement doesn't even require the, the, the publication to include the name of the candidate. So how does it doesn't provide any real notice to the public as to what really is happening. It only assemblage of people for this part is simply, somebody at this time and place, that's all that's required by the statute in the notice for a particular party by, by sponsoring individual or a party, but it doesn't actually have to, doesn't even, doesn't even require the name of the candidate to be in the notice. So that doesn't really tell the people anything. Well, but that's, that's part of her point, right? And when you say it doesn't have to have the name, there's a part of her argument is that public has a right to know if they're interested in party X, that they can show up and there may, there may even be competing candidates, right? For party X. That's not, that's not in the record that there's not been a showing that there's been competing candidates on the, in the record of her argument that we're trying to flush out and nobody, there's nothing in the record. They haven't produced a single piece of evidence that anybody ever actually shows up to sign a petition because of the notice. They haven't showed any evidence that this actually provides anything to other than imposing an arbitrary restriction on third party candidates and independent presidential candidates and everything that flows from that, including the inability to move from one location to another, unless you give an additional notice in a newspaper and that 10 day period waiting time costs the candidates money because they use all presidential candidates at this state in this day and age use paid circulators. It's just volunteers are just tuned. So these paid circulators didn't have to sit in hotel for 10 days. No way. Why did that just sit there? Why didn't you just employ them on the day? Pardon me? Well, they would be, they would be at the location. They would, but, but, but no, no, no, wait a minute. You're saying, I don't think you mean to say it, but what you're saying is they've got to pay these people to stay in the hotel for 10 days before they can go out and circulate. Why can't they just pay them on the day they're actually getting the petitions? Well, they're people from out of state or the out of state circulators are flying in. So they're being housed and it's not cost efficient to fly them out. I mean, and you can't apply, you can't hire somebody locally. You can't bring them out. They have the constitutional right to hire, to use out of state circulators. So I understand that, but you're telling me it's so darned expensive and I'm, and I'm trying to figure out, are you really hiring somebody making them sit in a hotel to do nothing for 10 days? I can't be, if, if they have, if, if, if, if they, if they've picked a bad location and that's possible and, and, and, and they might, if they pick a bad location and then they decide, they want to move to a different part of the county or the, or a different area, not noticed in that notice, they have to wait 10 days and the people already in the state and the out of state circulators would just be sitting there doing nothing. Well, and the constitutional point is, do you have any evidence that anybody's ever picked a bad location? Well, actually our guy did. Trent, Trent Poole did. And he didn't know where to go. Rocky's paid circulator from out of state, didn't know where to go. And, and so, and he, he was actually confused by this notice requirement, because it's actually telling a lie to the public that we're having a convention. These are not conventions. This is petition activity, pure and simple. I mean, it's confusing to people when they say you have to publish that you're having a convention and you have to have a hundred people. What does that mean to somebody coming from out of state? And it's uniquely a problem for independent presidential candidates. The Greens and Libertarians have figured this out. We concede that because they've lived here forever. They know what to do, but independent presidential candidates don't, especially when they're strapped for cash. They don't have, they don't have a, they don't, and they have to get on the ballot on 49 other states. Washington has this unique and singular restriction imposed on them that they've not come across anywhere else in the nation. Nobody else does this. And, and there's no evidence that this notice requirement does anything. Therefore, there's zero state interest advanced by this. And in Green Party of, Green Party of Arizona, they are required, required to provide evidence. It's a means end fit test. It's, they can't concoct these, these boogeymen without them being real and providing evidence that there is an issue and that this addresses the issue. This notice requirement is so generic, it doesn't do anything other than hamstring these candidates who want to circulate freely all throughout the state of Washington. It costs money. It imposes a geographical restriction on their ability to move, which is, which, which triggers strict scrutiny. You can't, you can't limit the audience that the circulators seek to reach by any means whatsoever. In order to get on the ballot, do you have to do this in every county or is it sufficient just to do it once within the state? I'm sorry, in order to get on the ballot as an independent party candidate in Washington for president, do you have to do this in every county or is it sufficient that you do it once in the state? You can, well, you do as many times as you need to get a thousand signatures, a thousand valid signatures, which as you probably know, means more than that, which is about 2,000 signatures. But in terms of the convention, you only need a hundred, right? Well, you have to get a hundred signatures at each location. If you don't get a hundred signatures at a location, then it's invalid. So if you're sitting at like 85 and it, you know, nobody's coming around, if you, if you decide to abandon that location, you lose those 85 signatures, which is in itself an impairment on speech. No, well, this is, I'm, I'm revealing my ignorance of the scheme here. So are you telling me that you have to do this at 10 different locations with a hundred each? Is that what you're telling me? No, you can do, what are you telling me that if you get a thousand signatures in one location, you're, or if you get all your signatures in one location, that's okay. That constitutes your convention. But you can do it in multiple locations. Absolutely. Okay. But so, but it's enough. If you have one location, you get a thousand signatures. And is there, is there a timeframe within which you have to get? For 90 days. Within 90 days. So there's that 10 day period. So, so all you need to do is find one location within the state at which within 90 days, you can get a, you can get a thousand signatures. Any Safeway store in the state of Washington will do the trick for you. Maybe or maybe not, Your Honor. That's not in the record. Where's the 90 day requirement? That is in a prior provision. It's the first Thursday in May, last Friday in, in, in July, you have the circuit. So it's a 90 day period. So there's 10 day, there's 10 day waiting periods. If you pick the wrong spot, eat up some time in, in that 90 day period. I would suggest, Your Honor, that the Sulcic versus Padilla case is directly on point here. That the state has not shown that their asserted interests have any evidence that they produce no evidence to support their asserted interests whatsoever. Thank you. Okay. Your, your turn. Okay. We'd heard how silly this is. What's your response? Well, frankly, Your Honor, Mr. De La Fuente is inaccurate as to what Washington's requirements are for minor party and independent conventions. The statute defines a convention as an organized assemblage of registered voters representing that particular candidate or minor party. At that convention, there must be a minimum of a hundred registered voters and ultimately you must obtain a thousand signatures of support to ultimately get on the ballot. But the convention requirement is more than that because at the convention, state law also requires the minor parties to identify who their presidential electors are going to be under the United States constitution. So Washington law certainly does require this to be a convention in the traditional sense. It says organized assemblage. Yes, Your Honor. How do you just, is this your response to the assertion that somebody circulating a petition can, can satisfy the convention requirement by showing up at the ferry terminal? If they had, for example, in the record, the Green Party I believe is at ER 74. Their particular notice was at a co-op, a grocery co-op location. And so they, they obtained a hundred registered voters to come to that co-op and have this event to, to have their nomination for their party. Is it a requirement that the hundred people be there simultaneously? Your Honor, the statute doesn't require that they be there simultaneously. So they can be a hundred people who trickle through over the course of a week and that satisfies the convention statute? If it was the organized assemblage, but what state... No, I'm sorry. I want to make sure I understand. So let's say I'm at the, at the co-op and I've got my signature gatherers and over the course of a week, I get a hundred signatures that are valid. So I probably got, you know, 200 to take care of the Mickey Mouse signatures. And they did that over the course of a week. Does that satisfy the requirement for a convention? It could satisfy the requirement for a convention. State law also requires them... It could or does? There's a yes or a no, I think. Well, it could because there's an additional requirement that we're missing here. This is why it's not just a signature gathering campaign such that you have a signature gatherer standing at the corner collecting signatures saying, do you want to support Mr. De La Fuente? State law contemplates that that convention is also going to nominate not only the candidate, but who are going to be the presidential electors to serve on behalf of that candidate. How would you do that over the course of a week if they're trickling through? It seems to contemplate a gathering on one day. Exactly, Your Honor. And there are... Exactly, Your Honor, but you just said you can do it over the course of a week. So what's the answer? I was envisioning that if you had an organized assemblage at this co-op and you elect your, you've determined who your nominees are going to be for as presidential elector under state law, under RCW 29A, 56, 6, 6, I'm sorry, 320 and 660. And then you proceed. You have a hundred registered voters who attend this convention. And then over the course of the time period... Attend the convention meaning at one point during the week they show up and sign something. Is that what you mean by attend? Well, Your Honor, I'm this, it just, I'm putting together all the different pieces of the statute together. But I asked you what you mean by attend. I think it does mean that they must attend this convention because it says... No, but you're still not answering my question. Oh, I'm sorry, Your Honor, I missed the question. Is it a requirement that they be there simultaneously? There is nothing in state law that specifically says all 100 registered voters must attend at a single point in time. There's, that is not what... So, so it's, so the attending requirement, convention requirement is satisfied if they do it over the course of a week individually. It could be, but there... If the convention lasted a week. If the convention lasted a week. So if the convention were only on the first day, then other, and 85 people came on days two through seven, that would not be, they would not have attended the convention, right? Correct, Your Honor. If that's what... So your notice says we're going to hold a convention over the course of 10 days in front of the Safeway. Yes. And that's what these notifications in the record do show. But there are other requirements than just the signature gathering campaign. And that's the state's point that De La Fuente simply is mischaracterizing what state law requires. And also to address the point with respect to the evidence that the state must put to support its interest, the United States Supreme Court has specifically held in Timmins that states do not have to put empirical evidence to support their regulatory interest. It seems so the more that you describe the convention as a little harder to, to, to do it than it seems like, because you keep going and, and that it's a little harder than what you say. It is. I don't think it's hard because the record shows that it's not hard. And in fact, the Green Party, the only testimony in this record from the Green Party's representative was testifying at ER, um, ER 118, that it was good party building activity that the local, they use their local chapters and thought it was a good reproach. And that at ER 112 that Washington's requirements for the convention are fairly reasonable and they don't have much difficulty putting candidates on the ballot. Everything that Mr. De La Fuente has argued here before today, if you look at his brief, there is not a single citation to state law or record citations to, to support what his arguments are, because that's not consistent with state law. And this newspaper notification, when this, when the proper balancing attack test is applied to this newspaper requirement, because that is the only requirement that is that issue before this court, it easily satisfies the constitutional burden. Let me try to understand how someone could qualify for this, uh, the state requirement. You've got to, you've got to have a thousand signatures total. You've got to have noticed 10 days ahead of time of a convention at which there will be a hundred attendees. So if I were to say publish, uh, I'm going to hold my convention during the week of X in front of the local Safeway store, uh, and I get a hundred signatures there and I get 900 signatures elsewhere. I'm fine. Have I, have I taken care of everything? If you've gotten, you have to pick your electors too. Well, but signatures, I'm assuming the signatures pick the electors. I mean, when I sign something, I assume it says, and I pick Joe for, for, for an elector. No, because the state doesn't control how the parties, uh, their electors. It just simply says at the convention, they must. So, but I would assume then if the, if the little form says, uh, I choose Joe and I sign it, that that would probably take care of it. Right. Or not. Um, no, because then state law also requires in the, in the, all of the certificate of nomination that the, the parties must show the name of the person nominated. So this is the certificate that must be made under oath for the convention. And that's at 29, a 56, six 40 of the state law. It must contain the name of the person nominated his or her residents, the office for what she's named a sworn statement by the statement from both nominees, giving their consent for the nomination. It must identify the minor party political party or independent candidate on whose behalf the convention was held. It must be verified by oath and by the presiding officer of the convention. And it must be accompanied by a nominating petition or petitions bearing the signature of a thousand registered voters. And it must contain proof of the publication of calling the convention. But in terms of what's required from the signatory, the state say someone who's attending the convention. Yes. The only thing that's required is that they sign their name and give their address. Yes, Your Honor. There's a petition. Requirements are at no, no, no. That's what, that's what I'm trying to figure out. But then for a, for the presidential electors, we're talking about two different things. That's a different certificate and oath of office that they must take because they're different requirements. I just have one last question because you were over time, but it's six 10, by the way, that says it was between the first Saturday in May and the, and the fourth Saturday in July. So I apologize for overlooking that, but would it suffice to have one notice that said that that's how we're going to have party X is going to have his convention at the co-op on the first Saturday in May and every Saturday thereafter until we get a thousand signatures for the newspaper notification requirement. Yes, that would satisfy the newspaper notification requirement that we're talking about here. Thank you. Thank you, Your Honor. We ask that you reverse the district court. Thank you. Thank you. Thank both sides. Uh, Rocky de la Fuente versus Wyman submitted for decision. And now we're in term.
judges: W. Fletcher, Callahan, Christen